**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

CHRISTIAN PIESCIK, on behalf of himself
and those similarly situated,

      Plaintiff,

-vs-

CVS PHARMACY, INC.,

      Defendant.

Case No.: 9:21-cv-81298-DMM

**DEFENDANT CVS PHARMACY, INC.'S MOTION TO DISMISS**
**PLAINTIFF'S CLASS ACTION COMPLAINT AND INCORPORATED**
**<u>MEMORANDUM OF LAW</u>**

Defendant CVS Pharmacy, Inc. ("CVS"), by and through undersigned counsel, and pursuant to Federal Rule of Civil Procedure 12(b), moves to dismiss Plaintiff Christian Piescik's ("Plaintiff" or "Piescik") Class Acton Complaint, and in support thereof states:

## I.     **INTRODUCTION**

This is a case about hand sanitizer, which over the past 18 months has become one of the most ubiquitous products in modern life.  Hand sanitizer is literally everywhere.  It is in our homes, offices, stores, schools, and even courthouses.  Any reasonable consumer knows that the purpose of hand sanitizer is to kill germs *on your hands*.  A reasonable consumer also knows that hand sanitizer is not intended to kill "all germs" wherever those germs may be found, and that using hand sanitizer is not a substitute for washing your hands with soap and water.[1]  Plaintiff Christian Piescik ("Plaintiff" or "Piescik"), assuming his allegations are true, is not a reasonable consumer. He is not injured; no reasonable consumer would be deceived by the conduct he alleges, and his case should be dismissed with prejudice. Other courts in Ohio and California have recently dismissed nearly identical complaints against hand-sanitizer manufacturers on the grounds that the plaintiffs lack standing and are not reasonable consumers. *Moreno v. Vi-Jon.*, No. 20cv1446 JM(BGS), 2021 WL 807683, at *1 (S.D. Cal. Mar. 3, 2021); *Alesia et. al v. GOJO Industries, Inc*., No. 5:20-cv-02383-JCP (N.D. Ohio Oct. 20, 2020); *Souter v. Edgewell Personal Care Company*, No. 20-cv-01486-TWR-BLM, 2021 WL 3892670, at *1 (S.D. Cal. June 7, 2021).

CVS indirectly and directly operates a chain of retail pharmacy stores.  The store brand hand sanitizer product at issue (the "Product") is manufactured, tested and labeled in strict compliance with FDA guidelines.  Plaintiff does not dispute this, but his Complaint claims that the front label of the Product misled him to believe that the Product would kill "99.99% of all

---

[1] CDC, *Show Me the Science – When & How to Use Hand Sanitizer in Community Settings*, (last accessed on September 10, 2021) https://www.cdc.gov/handwashing/show-me-the-science-hand-sanitizer.html.

known germs." [Dkt. 5., ¶¶ 18-23]. The Complaint does not contend that the Product was ineffective at sanitizing consumers hands, and discounts that the front label on the Product contains an asterisk directing the consumer to the rear label, which states, "*Effective at eliminating 99.99% of *many common harmful germs* and bacteria in as little as 15 seconds." *Id*. at ¶ 16. Nor does the Complaint explain why a reasonable consumer would expect alcohol-based hand sanitizer to be effective against food borne illnesses, (e.g. norovirus) or other obscure germs (e.g. Protozoan Cysts, Clostridium difficile).

Plaintiff has not alleged any injury-in-fact. He does not claim to have suffered from any illness as a result of using the Products, and does not even claim to have opened or used any of the Products he allegedly purchased. He also fails to satisfy Rule 9(b)'s heightened pleading standard, and his claims are preempted by federal law. His claims for equitable relief must be dismissed because he has an adequate remedy at law, and he is not at risk of future harm. This Court should follow *Moreno*, *Alesia* and *Souter* and dismiss Plaintiff's Complaint.[2]

## II. <u>STATEMENT OF FACTS</u>

### A. <u>What Is In the Complaint</u>

This case concerns the labeling on CVS store brand alcohol-based hand sanitizer, including "CVS Original Scent Moisturizing Hand Sanitizer and related CVS brands." [Dkt. 5, ¶¶ 1-2.] Piescik claims he "purchased the hand sanitizer Product from a local West Palm Beach CVS store in March of 2020." *Id.* at ¶ 12.

He claims to have been deceived by the Product's "packaging and labeling," which states that the Product "kills 99.99% of germs*." *Id.* at ¶ 15. He contends this statement is false and

---

[2] Two district courts have denied Motions to Dismiss in hand-sanitizer cases: *Macormic v. Vi-Jon, LLC*, No.: 4:20CV1267 HEA (E.D. Mo. Aug. 6, 2021); *Mier v. CVS Pharmacy, Inc*., No.: SA CV 20-01979-DOC-ADS, 2021 WL 1559367, at *1 (C.D. Cal. Mar. 22, 2021). In neither of these cases did the courts seriously consider the defendants' Article III standing or reasonable consumer arguments.

misleading because the Products are allegedly not effective with respect to a handful of organisms, including norovirus, bacterial spores, protozoan cysts.  *Id.* at ¶¶ 6, 21-23.  Plaintiff claims that "CVS knew or should have known its claims were not backed by scientific studies to validate its 99.99% claims," and that "[n]o scientific study indicates that alcohol-based hand sanitizers kill 99.99% of germs."  *Id.* at ¶¶ 7, 19.

Piescik says he purchased the Product after reading "kills 99.99% of germs*" on the front label, but that he disregarded the asterisk and the rear label which states, "*Effective at eliminating 99.99% of *many common harmful germs and bacteria in as little as 15 seconds.*" *Id.*  at ¶¶ 15-16. The Complaint admits that Piescik did not read the entire label, but also argues that that even if a reasonable consumer did observe the asterisk, turn the product over and read the full label (front and back), that consumer would still think that the Product promises "to kill 99.99% of *all* germs" whether those germs are on his hands or somewhere else. (*Id.* at ¶ 17 (emphasis added)).[3]

###     B.     What Is *Not* In the Complaint

The Complaint says absolutely nothing about CVS Pharmacy, Inc.  CVS Pharmacy, Inc. is the named defendant, but the only allegations in the Complaint are against "Defendant CVS Health" an alleged "Rhode Island corporation."  *Id*. at ¶ 13.  As will be discussed below, there is no Rhode Island Corporation named "CVS Health."

As to the substance of the allegations, Piescik does not actually say which CVS Product he purchased, and he does not contend that he was harmed by the Product in any way.  *In fact, he does not claim that he ever opened or used the Products*.  He does not allege that the Product failed to serve their purpose as hand sanitizer, let alone that he was exposed to any disease-causing virus or bacteria because it was not killed during his alleged use.  He does not say that he developed any

---

[3] The word "all" does not appear on the label. Piescik does not contend that it's there, but apparently believes it is implied.

viral infections or any other illness following his use of the Product.  He also does not say how much he paid for the Product or how much he allegedly would have paid but for the allegedly deceptive labeling.

Critically, Piescik fails to acknowledge that his March 2020 purchase coincided with the beginning of the global COVID-19 pandemic, and by that time any reasonable consumer would have been aware of the extensive media coverage[4] and *government* recommendations to use alcohol-based hand sanitizer when handwashing is not available. While he claims to have purchased the Product in reliance on the label, he ignores the irrefutable fact that in March 2020 consumers were purchasing any hand sanitizers they could find, irrespective of label claims.  Some were even making their own hand sanitizers, contrary to public health guidance. [5]  Plaintiff does not challenge that the Products do, in fact, kill 99.99% of "many common harmful germs & bacteria," and does not dispute that the Products are effective at *sanitizing consumers' hands*. (If this case continues, CVS will prove that the label claims are well substantiated by scientific studies.) Plaintiff's claim therefore rests only on his reflexive assumption that the language on the front label — when read in a vacuum and while disregarding the asterisk, the rear label language, and widespread common knowledge about what hand sanitizer is intended to do — is misleading.

---

[4] By March 2020, COVID-19 dominated the news cycle in Florida. On January 31, 2020, the United States Department of Health and Human Services declared COVID-19 to be a national health emergency. https://www.phe.gov/emergency/news/healthactions/phe/Pages/2019-nCoV.aspx.  On March 1, 2020, the Florida Department of Health (FDH) announced COVID-19 cases in Florida, simultaneously recommending using hand sanitizer when soap and water are not available.  FDH Press release March 1, 2020,        http://www.floridahealth.gov/newsroom/2020/03/030120-two-presumptive-positive-covid19-cases.pr.html   On March 9, 2020, Governor Ron DeSantis Issued Executive Order 20-52 Declaring a State of Emergency for COVID-19.  On March 14, 2020, Miami Mayor Francis Suarez tested positive for COVID-19.
[5] https://www.fda.gov/consumers/consumer-updates/safely-using-hand-sanitizer#:~:text=Don%E2%80%99t%20Make%20Your%20Own%20Hand%20Sanitizer%20The%20FDA,reports%20of%20skin%20burns%20from%20homemade%20hand%20sanitizer.

### III. THE COMPLAINT SHOULD BE DISMISSED BECAUSE PIESCIK LACKS STANDING

#### A.      Legal Standard Applicable To Rule 12(b)(1).

Under Article III of the United States Constitution jurisdiction of the federal courts extends only to actual cases or controversies. To satisfy the Article III standing requirements, a plaintiff must show: (1) that he has suffered injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) the likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The Supreme Court has held that the injury must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Friends of the Earth, Inc. v. Laidlaw Env't. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000); *Spokeo, Inc. v. Robins*, 578 U.S. 856, 136 S. Ct. 1540, 1545, 1548 (2016) (citations omitted). Where a complaint makes allegations of potential future injury, the threat of future harm must be "certainly impending" as opposed to a mere possibility. *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990). Where, as here, the face of the complaint does not demonstrate a basis for standing, the Court should dismiss the action. *Amnesty Int'l, USA v. Battle*, 559 F.3d 1170, 1177 (11th Cir. 2009)

#### B.      The Complaint Does Not Disclose Any Injury-in-Fact.

Piescik has not pled facts to show any palpable injury or future risk of concrete injury. Instead, the Complaint is entirely predicated on a "potential" risk of disease – an unrealized risk of harm that could have resulted from use of the Products (or which the Products allegedly failed to prevent), but which Piescik does not claim occurred. As courts in this circuit and others have held time and again, the hypothetical risk of future injury is insufficient to establish standing. *See, e.g., Doss v. Gen. Mills, Inc.*, No. 18-61924-Civ-Scola, 2019 WL 7946028, at *3 (S.D. Fla. June 14, 2019) ("Any hypothetical health risks [Plaintiff] alludes too are far too speculative to

5

manufacture standing in this case."), *aff'd*, 816 F. App'x 312 (11th Cir. 2020), *see also Breakstone v. Caterpillar, Inc.*, No. 09-23324-CIV, 2010 WL 2164440, at *6 (S.D. Fla. May 26, 2010).[6]

Piescik cannot overcome the standing hurdle through his conclusory allegation that he would not have purchased the Products had he known the label was allegedly false. This court has previously held that there is no standing where plaintiff "does not allege her health has suffered as a result of" consuming a product and where they allege their only harm is "'economic loss' resulting from buying a product under allegedly false pretenses." *Doss*, 2019 WL 7946028, at *2; *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 320 (5th Cir. 2002) ("[w]here a plaintiff 'concede[s] . . . not [being] among the injured[,]' her claimed 'wrong[ ] cannot constitute an injury in fact.'") The *Rivera* court faced a plaintiff who was attempting to disguise their "no-injury products liability law suit" as a contract law suit in order to utilize the "benefit of the bargain" test.  *Rivera*, 283 F.3d at 320-21 ("The plaintiffs apparently believe that if they keep oscillating between tort and contract law claims, they can obscure the fact that they have asserted no concrete injury. Such artful pleading, however, is not enough to create an injury in fact."), *see Prohias v. Pfizer, Inc.,* 485 F. Supp. 2d 1329 (S.D. Fla. 2007) (finding no injury-in-fact sufficient for Article III standing where plaintiffs alleged price inflation damages due to drug company's alleged false advertising.)

In addition to *Doss,* other courts in this district have adopted *Rivera's* reasoning to find no Article III standing where plaintiffs bring what amount to no-injury products liability cases alleging economic harm under the cover of consumer protection statutes. *See, e.g.*, *Green v. PepsiCo, Inc.*, No. 18-62011-Civ-Scola, 2019 WL 8810364, at *2 (S.D. Fla. Apr. 12, 2019) ("Here, the Plaintiff does not allege that her health has suffered as a result of eating Quaker Oats. Instead,

---

[6] *See, c.f., In re Bisphenol -A (BPA) Polycarbonate Plastic Prods. Liab. Litig.*, 687 F. Supp. 2d 897, 912-13 (W.D. Mo. 2009); *Kornthaly v. L'Oreal USA, Inc.,* 374 Fed. App'x. 257 (3d Cir. 2010).

the Plaintiff's harm is 'economic loss' resulting from buying a product under allegedly false pretenses. These claims fail to establish 'injury in fact.'")[7]

Faced with nearly identical facts, the *Moreno* court held that the plaintiff lacked Article III standing because he had not alleged a negative experience associated with the Product, despite claiming that the Product does not "kill 99.99%" of "all germs."  Moreno had not claimed that he purchased or used the Product to prevent any of the diseases or viruses he identified in his complaint.  He also did not allege that he contracted any of the diseases or viruses he claimed that the Product did not protect against.  The Court held that the mere possibility of contracting one of the diseases or viruses listed in Moreno's complaint (because the Product allegedly does not kill the germs which cause them) was insufficient to confer Article III standing.

The *Alesia* plaintiffs attempted to satisfy Article III standing by "claim[ing] they would not have purchased Purell Advanced Hand Sanitizer had Defendant not marketed it as killing over 99.99% of germs."  The court found that, "[a]ssuming the truth of this allegation, Plaintiffs have not suffered an injury [because t]hey received fair value for what they paid."  The court reasoned that plaintiffs "paid for hand sanitizer," "received hand sanitizer," and "did so in an arm's length transaction."  The court further noted that plaintiffs made "no allegation… that they received snake oil, water, or a product that did not accomplish its intended purpose." Instead, they "only allege that [the hand sanitizer] may not be as effective as advertised." Accordingly, the court found that "they received the benefit of the bargain and may not transform what would be a contract dispute (if Plaintiffs had a contract with Defendant) into a consumer class action." [8]

---

[7] The Court in *Doss* also found persuasive *In re Fruit Juice Prods. Mktg. & Sales Pracs. Litig.*, 831 F. Supp. 2d 507, 512 (D. Mass. 2011) (in which the court found no injury-in-fact where the "[p]laintiffs paid for fruit juice, . . . received fruit juice, which they consumed without suffering harm") *Doss,* 2019 WL 7946028, at *2.

[8] *See e.g., Contreras v. Toyota Motor Sales U.S.A. Inc.*, 484 F. App'x 116, 118 (9th Cir. 2012) (no standing despite plaintiffs' bare allegation "that they would not have purchased the vehicles had they known of the

This is not a typical false advertising case. This case is about germ kill statements on consumer *hand sanitizer*. Plaintiff claims that the Products promised to kill germs which they allegedly did not kill.  To state an injury in fact, Piescik must allege that the hand sanitizer Products he purchased failed to kill 99.99% of the common germs he *reasonably expected to find on his hands.*  Piescik has not done that, so he has not alleged Article III standing.

## IV.    PLAINTIFF FAILS TO STATE A CLAIM

### A.    There Are No Allegations Against CVS Pharmacy, Inc.

As noted above, the named defendant is CVS Pharmacy, Inc., but the Complaint does not allege any facts or legal claims with respect to CVS Pharmacy, Inc. Instead, all of the allegations in the Complaint are against "Defendant CVS Health" a "Rhode Island corporation." [Dkt. 5, ¶¶ 1, 13.] There is no Rhode Island corporation called "CVS Health."  Presumably, this was an unintentional error by Plaintiff, but as it stands now, the entire Complaint should be dismissed because there are no claims asserted against CVS Pharmacy, Inc.  Should the case proceed, Plaintiff should be required to amend the complaint to remedy this defect.

### B.    Legal Standard Applicable To Motions Under Rule 12(b)(6) and 9(b).

A motion to dismiss for failure to state a claim challenges the legal sufficiency of the pleadings.  To overcome a Rule 12(b)(6) motion, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Facts merely consistent with a defendant's

---

defect"); *Fisher v. Monster Beverage Corp.*, 125 F. Supp. 3d 1007, 1022 (C.D. Cal. 2013) *aff'd and rev'd in relevant part*, 656 F. App'x 819, 822 (9th Cir. 2016).

liability are insufficient to survive a motion to dismiss because they establish only that the allegations are possible rather than plausible.  *See id.* at 678-79, 696 (citation omitted).

Where, as here, the claims "sounds in fraud," the pleading must satisfy the particularity requirement of Rule 9(b), which requires the plaintiff to "state with particularity the circumstances constituting fraud." *Adams v. Carnival Corp.*, 482 F. Supp. 3d 1256, 1262 (S.D. Fla. 2020); Fed. R. Civ. P. 9(b); *see also Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1127 (11th Cir. 2019), *cert. denied*, 140 S. Ct. 2828 (2020) ("Plaintiffs alleging fraud must 'state with particularity the circumstances constituting fraud or mistake.'").  Courts within this circuit have repeatedly held that claims arising under Florida law are subject to Rule 9(b) "where the gravamen of the claim sounds in fraud." *State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1328 (S.D. Fla. 2017).[9]  Under Rule 9(b), plaintiffs must allege "(1) the precise statements, documents, or misrepresentations made; (2) the time, place and person responsible for the statement; (3) the content and manner in which these statements misled [him]; and (4) what the defendants gained by the alleged fraud." *Wilding*, 941 F.3d at 1128 (citation omitted). The Eleventh Circuit has also held that "bare allegation[s] of reliance on alleged misrepresentations, bereft of any additional detail, will not suffice under Rule 9(b).  *Id.*

Rule 9(b) serves not only to give notice to defendants of the specific fraudulent conduct against which they must defend, but also should "prohibit plaintiff[s] from unilaterally imposing

---

[9] *See also Llado-Carreno v. Guidant Corp.*, No. 09-20971-CIV, 2011 WL 705403, at *5 (S.D. Fla. Feb. 22, 2011) (emphasis added) ("The particularity requirement of Rule 9(b) applies to all claims that sound in fraud, regardless of whether those claims are grounded in state or federal law."*Blair v. Wachovia Mortg. Corp.,* No. 5:11-cv-566-OC-37TBS, 2012 WL 868878, at *4 (M.D. Fla. Mar. 14, 2012) ("to the extent Plaintiff bases her claims on a traditional FDUPTA violation, such claims are due to be dismissed because they do not meet Rule 9(b)'s heightened pleading standard."); *Stires v. Carnival Corp.*, 243 F. Supp. 2d 1313, 1322 (M.D. Fla. 2002) ("Most courts construing claims alleging violations of the Federal Deceptive Trade Practices Act or its state counterparts have required the heightened pleading standard requirements of Rule 9(b).").

upon the court, the parties and society enormous social and economic costs absent some factual basis." *Rhodes v. Omega Rsch., Inc.*, 38 F. Supp. 2d 1353, 1359 (S.D. Fla. 1999), (citing *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996), (quoting *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir.1985)).[10]  The circumstances constituting the alleged fraud must "be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co*., 567 F.3d 1120, 1124 (9th Cir. 2009) (citing *Bly-Magee v. Cal.*, 236 F.3d 1014, 1019 (9th Cir. 2001)).

C.     **Plaintiff Fails To Meet The Heightened Pleading Standard Or To Adequately Allege The Circumstances Of His Purchase.**

Piescik fails to satisfy Rule 9(b)'s heightened standard because he does not adequately describe "the who, what, when, where, and how of the allegedly false statements, and then allege generally that those statements were made with the requisite intent." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008). Specifically, he never says how the allegedly misleading statement on the Products' front label deceived him into purchasing the Products at the outset of the global pandemic (when most consumer were buying any hand sanitizer they could find, and even making their own), and does not indicate how the alleged misrepresentation caused his alleged injury.  Did he expect a hand sanitizer to protect him from norovirus? Clostridium difficle? Protozoan cysts? Invasive parasites? Giardia?  Was he concerned about non-enveloped viruses and did he seek out the Products to protect himself from those specific germs?  Was he exposed to or did he contract norovirus or any of the other viruses or germs he lists in the Complaint after using the Products?  The Complaint does not answer any of these critical questions.  Piescik cannot meet Rule 9(b)'s particularity requirement unless he "connects the dots" between the alleged

---

[10] *See also United States ex rel. Clausen v. Lab'y Corp. of Am., Inc*., 290 F.3d 1301, 1310 (11th Cir. 2002) ("Clausen") ("The particularity rule serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against . . . [frivolous suits]."

misrepresentation and his alleged damage.  *PB Prop. Mgmt., Inc. v. Goodman Mfg. Co., L.P.*, No. 3:12-CV-1366-J-20JBT, 2013 WL 12172912, at *7 (M.D. Fla. Aug. 28, 2013) (dismissing FDUTPA claim where the plaintiff failed to allege with sufficient particularity whether it or any other consumer had actually viewed the representations prior to purchasing).

Unable to allege facts to support his claim that the Products did not do what he expected them to, Plaintiff attempts to shift his pleading burden onto CVS by claiming "on information and belief," that there are no scientific studies to support CVS's label.  [Dkt. 5, ¶¶ 6, 7.]  Should this case continue, CVS will provide scientific studies demonstrating that the Products kill 99.99% of the germs which FDA considers to be relevant to consumers' hands within 15 seconds, but more importantly, courts in this district have routinely held that pleadings "based on 'information and belief" without adequately setting forth supporting facts on which the belief is founded… fail[] to satisfy Rule 9(b)'s heightened pleading standard." *Great Fla. Bank v. Countrywide Home Loans, Inc.*, No. 10-22124-CIV, 2011 WL 382588, at *5 (S.D. Fla. Feb. 3, 2011).[11]

### D. A Reasonable Consumer Would Not Interpret the Products' Labels To Mean That The Products Will Kill Every Conceivable Disease-Causing Microorganism.

Dismissal is appropriate where a Court can conclude as a matter of law that members of the public are not likely to be deceived by an advertisement. Where, as here, a plaintiff's claims are each predicated on an alleged misrepresentation on a product package, those claims should be

---

[11] *See also USA Nutraceuticals Grp., Inc. v. BPI Sports, LLC*, No. 15-CIV-80352-Bloom/Valle, 2016 WL 4254257, at *4 (S.D. Fla. Feb. 16, 2016) ( finding that the Rule 9(b) particularity requirement was not met where the allegations made "upon information and belief" were "critical allegations which form the exclusive basis of the purported deception"); *Associated Indus. Ins. Co. v. Advanced Mgmt. Servs., Inc*., No. 12-80393-CIV, 2013 WL 1149668, at *8 (S.D. Fla. Mar. 19, 2013) ("The specific acts alleged in the general allegations . . . which detail specific documents and satisfy some of Rule 9(b)'s specificity requirements, are inadequate because, for one thing, they are based upon information and belief . . . ."); *see also Clausen*, 290 F.3d at 1310 ("pleadings generally cannot be based on information and belief" when Rule 9(b) applies).

dismissed if the product packaging and labels as a whole would not establish "that members of the public are likely to be deceived." *Williams v. Burger King Corp.*, No. 19-24755, 2020 WL 5083550, at *5 (S.D. Fla. July 20, 2020) (quoting, *Williams v. Gerber Prods. Co.,* 552 F.3d 934, 938 (9th Cir. 2008)).

In *Moreno,* the court held that the plaintiff *could not* simply look to the statement on the front label ("Kills 99.99% of germs*"), ignore the asterisk and the rear label language ("*Effective at eliminating 99.99% of many common harmful germs in 15 seconds or less") and claim to have been misled. Put another way, the Court noted that the word "germs*" on the front label is clarified by the statement on the rear label, that the hand sanitizer is effective at eliminating 99.99% of "many common harmful germs and bacteria." Critically, the Court found that it is simply not plausible that the reasonable consumer could be misled into thinking that the Product would kill 99.99% of "all germs." (*See also*, *Souter*, 2021 WL 3892670, at *5 ("No reasonable consumer would believe that a hand wipe advertised to kill 99.99 percent of germs would be effective against the bacteria and viruses that Plaintiff names.")

Other federal courts have held that a reasonable consumer would read an asterisk or similar notation as an indication that there is important information elsewhere on the package or in a separate document that the consumer should read and understand.  *See Dinan v. SanDisk LLC*, No. 18-cv-05420-BLF, 2020 WL 364277, at *9 (N.D. Cal. Jan. 22, 2020). The Court in *Dinan* explained:

> "Asterisks are common in both commerce and elsewhere to denote that the 'reader' should be aware that there is more than meets the eye." Because "the asterisk calls the consumer's attention to the fact that there is supplemental information on the package that the consumer should read," "it matters less that the disclosure is allegedly not conspicuous on the package." "Once the consumer is directed to look for the disclosure because of the asterisk, he knows to look for it and can find it in the fine print."

*Dinan,* 2020 WL 364277, at *8 (citations omitted); *see also, Molina v. HealthCare Revenue Recovery Grp., LLC*, No. 8:11-cv-1642-T-27TBM, 2012 WL 3067883, at *2, n.2 (M.D. Fla. Jul. 27, 2012) (*quoting McStay v. I.C. System, Inc.*, 308 F.3d 188, 191 (2d Cir. 2002) ("when a prominent instruction in the body of the letter warns that there is important information on the reverse side, a reasonable reader, even if unsophisticated, would turn the paper over and read the back").[12] Here, Piescik cannot prove that the Products' labels as a whole would render reasonable "members of the public . . . *likely* to be deceived." *Williams,* 2020 WL 5083550 at *5 (emphasis added).  *See also Hi-Tech Pharmaceuticals, Inc. v. HBS International Corp.*, 910 F.3d 1186, 1198 (11th Cir. 2018) (considering product's label as a whole and taking its statements in context). When read as a whole, the Products' label confirms to the reasonable consumer that the 99.99% reference is to many common harmful germs and bacteria on their hands- a true, accurate and supported representation.

Further, even if this Court were to ignore the asterisk and the rear label language (which it should not), Plaintiff's interpretation of the front label language is implausible and inconsistent with how a reasonable consumer would understand the Products' function. Over the past eighteen months, the effectiveness of hand sanitizer has become a subject of almost universal public attention. A Google search of "Hand Sanitizer Effectiveness" turns up over 5 million results. Easily available references from the CDC and FDA generally state that, while hand sanitizers are effective against many harmful microorganisms, they do not kill all microorganisms.[13]  These

---

[12] *See also Garcia v. Sony Comp Ent. Am..,* 859 F. Supp. 2d 1056, 1065 (N.D. Cal. 2012) (statements on package about product compatibility accompanied by an asterisk directing consumers to a separate document were "only partial statements, and do not rise to the level of affirmative misrepresentations" without examining the document referred to); *Bobo v. Optimum Nutrition, Inc.,* No. 14CV2408 BEN (KSC), 2015 WL 13102417, at *4 (S.D. Cal. Sept. 11, 2015) ("A plaintiff cannot pursue a claim based on a statement that can only be misleading when the information surrounding it is ignored.").

[13] *See, e.g., Show Me the Science – When & How to Use Hand Sanitizer in Community Settings,* https://www.cdc.gov/handwashing/show-me-the-science-handsanitizer.html; *Q&A for Consumers Hand*

references also state that washing with soap and water is generally more effective than hand sanitizer for hand hygiene, something the *Moreno* court pointed out that even schoolchildren know. *Moreno*, 2021 WL 807683 at * 6.  Having lived through almost two years of a global pandemic, a reasonable consumer would be expected to know what hand sanitizer does and does not do.

Moreover, common sense and logic would dictate that a hand sanitizer product will eliminate the germs and bacteria commonly found on *hands*. With few exceptions, the organisms Plaintiff identifies in the Complaint either do not occur on human hands or are not common. Norovirus is a foodborne pathogen spread predominantly in health care and food facilities through fecal material or vomit particles.[14] The Giardiasis illness is caused by the Giardia parasite, which is most often found during international travel, tainted drinking water, or through human fecal matter and sexual contact.[15] Clostridium Difficile is most often spread through patients taking high doses of antibiotics or prolonged periods of antibiotics in a healthcare setting, rather than a household setting which the Product label clearly states.[16] While Clostridium Difficile is one of the most frequent causes of infectious diarrhea in long-term care facilities and hospitals in industrialized countries, government health agencies have recommended the use of "alcohol-based hand rub at the point-of-care as the preferred method for hand hygiene in all healthcare settings,"

---

*Sanitizers and COVID-19*, https://www.fda.gov/drugs/information-drug-class/qa-consumers-hand-sanitizers-and-covid-19

[14] CDC, *How Norovirus Spreads* (last accessed Apr. 7, 2021). CDC states that alcohol-based hand sanitizers can be used to control norovirus outbreaks in addition to hand washing with soap and water. *See* CDC, *Preventing Norovirus*, (last accessed Apr. 7, 2021), http://cdc/gov/norovirus/about/prevention.html.

[15] *See*, https://medlineplus.gov/giardiainfections.html.

[16] *See*, Gov't of Canada, *Routine practices and additional; precautions for preventing the transmission of infection in healthcare settings*, (last accessed Sept. 3, 2021), https://www.canada.ca/en/public-health/services/infectious-diseases/nosocomial-occupational-infections/routine-practices-additional-precautions-preventing-transmission-infection-healthcare-settings.html.

as a way to combat the spread of C. difficile.[17] As a matter of law, Piescik's claims do not meet the reasonable consumer standard.

### E.    The Complaint Fails To Support a False Advertising Claim.

In order to bring a claim for damages under the FDUTPA a plaintiff must demonstrate a deceptive act or unfair practice, causation, and actual damages. *See Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1338 n.25 (11th Cir. 2012). The Eleventh Circuit has made it clear that a deceptive act occurs when "there is a representation, omission, or practice that is *likely* to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007) (emphasis added) (quoting *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003)).  Determining if a practice is likely to mislead a reasonable consumer requires plaintiff to demonstrate "probable, not possible, deception." *Millennium Commc'ns & Fulfillment, Inc. v. Off. of the Att'y Gen.*, 761 So. 2d 1256, 1263 (Fla. 3d DCA 2000).[18]  Further, under the Florida False Advertising Law ("FAL") a plaintiff must sufficiently plead that the defendant made statements that were "known, or through the exercise of reasonable care or investigation could or might have been ascertained, to be untrue or misleading." Fla. Stats. Ann. § 817.40 (West). As amply demonstrated above, Piescik has failed to sufficiently demonstrate that he is a reasonable consumer or that the alleged false statements on the Products' label caused him any actual damage. He has also failed to sufficiently allege that the

---

[17] *Routine practices and additional; precautions for preventing the transmission of infection in healthcare settings*    https://www.canada.ca/en/public-health/services/infectious-diseases/nosocomial-occupational-infections/routine-practices-additional-precautions-preventing-transmission-infection-healthcare-settings.html.

[18] Numerous Federal circuit courts have held that a lack of scientific substantiation cannot by itself establish falsity or deception in advertising. *See, Kwan v. Sanmedica Int'l*, 854 F.3d 1088, 1092-93 (9th Cir. 2017) (precluding private citizens from bringing actions that allege that the challenged advertising language merely lacked proper scientific substantiation); *see also Procter & Gamble Co. v. Chesebrough-Pond's Inc.*, 747 F.2d 114, 119-20 (2d Cir. 1984); *Franulovic v. Coca Cola Co.*, 390 Fed. App'x 125, 127-28 (3d Cir. 2010); *BASF Corp. v. Old World Trading Co.,* 41 F.3d 1081, 1090-91 (7th Cir. 1994).

Products' labels, read in their entirety (front and back) are untrue. As such, his claims under the FDUTPA and the FAL should be dismissed.

## V. **PLAINTIFF'S CLAIMS ARE EXPRESSLY PREEMPTED**

The Public Readiness and Emergency Preparedness Act ("PREP Act") "authorizes the Secretary of Health and Human Services (HHS) to issue a Declaration to provide liability immunity to certain individuals and entities (Covered Persons) against any claim of loss caused by, arising out of, relating to, or resulting from the manufacture, distribution, administration, or use of, medical countermeasures (Covered Countermeasures)." The PREP Act is intended to apply in a public health emergency. 42 U.S.C. §§ 247d-6d, 247d-6e. If the Secretary determines that such conditions exist, he or she "may make a declaration, through publication in the Federal Register, recommending … the manufacture, testing, development, distribution, administration, or use of one or more covered countermeasures, and stating that [42 U.S.C. 247d-6d(a)] is in effect with respect to the activities so recommended." The Secretary has issued such a declaration regarding the COVID-19 pandemic. 85 Fed. Reg. 15198 (Feb. 4, 2020), as amended by HHS.

The PREP Act creates immunity for all claims of loss related to the administration or use of Covered Countermeasures, which are certain drugs, biological products, or devices. … U.S.C. § 247d-6d. In addition to immunity, the PREP Act includes an express preemption provision: "no State . . . may establish, enforce, or continue in effect with respect to a covered countermeasure any provision of law or legal requirement" that is "different from, or is in conflict with, any requirement applicable under this section." 42 U.S.C. § 247d-6d(b)(8). State laws that differ or conflict regarding the manufacture, distribution or administration of Covered Countermeasures are expressly preempted. Moreover, the preempted state "requirements" include common-law tort

claims, because "[a]bsent other indication, reference to a State's 'requirements' includes its common-law duties." *Riegel v. Medtronic, Inc*., 552 U.S. 312, 324 (2008).[19]

The Products are Covered Countermeasures because FDA permits their use as Over the Counter (OTC) hand sanitizers which are drugs that are manufactured and used to mitigate/prevent a pandemic or epidemic or to limit the harm such pandemic might otherwise cause.  *See* 42 USC § 274d-6d(i)(7)(A)-(B); 21 USC 321(g)(1). PREP Act immunity even applies if a person or entity reasonably believed that the product was a Covered Countermeasure but it was not a Covered Countermeasure.  *See Advisory opinion on the Public Readiness and Emergency Preparedness Act and the March 10, 2020 Declaration Under the Act, Dept. of Health and Human Serv., Office of Gen. Counsel, May 19, 2020.*  The retail sale of Covered Countermeasures has been designated by HHS as a Countermeasure Program. *See Declaration Under the PREP Act for Medical Countermeasures Against COVID-19,* 85 Fed. Reg. 15198, 15200 (Mar. 10, 2020) (barring claims against retail drugstore that provides for the administration or distribution of countermeasures). Further, Defendants are Covered Persons under the act, because they manufacture, distribute and administer Covered Countermeasures and countermeasure programs or reasonably believed the products were covered countermeasures. 42 U.S.C. 247d–6d. The PREP Act is a complete preemption statute, and Piescek's claims against CVS are therefore barred.  *See Beneficial National Bank v. Anderson*, 539 U.S. 1, 8 (2003).

## VI.   PLAINTIFFS CLAIMS ARE BARRED BY THE PRIMARY JURISDICTION DOCTRINE

The "Primary jurisdiction" doctrine "applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues

---

[19] Among other programs, the Act also establishes a federal "Covered Countermeasure Process Fund," which is designed to provide "timely, uniform, and adequate compensation" through a no-fault claims process. *Id*. § 247d-6e(a). This federal administrative remedy, too, is "exclusive." *Id*. § 247d-6d(d)(1).21

which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views" *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956); *see also Smith v. GTE Corp.*, 236 F.3d 1292, 1298, n.3 (11th Cir. 2001). The policy motivation behind the doctrine is "expertise of the agency . . . and the need for a uniform interpretation of a statute or regulation." *Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1310 (2d Cir. 1990) (citations omitted). If the doctrine applies, courts must then "dismiss the case without prejudice." *Reiter v. Cooper*, 507 U.S. 258, 268-69 (1993) (citations omitted).

The FDA clearly has the requisite expertise to regulate the labeling of hand sanitizers, as it already regulates extensively in the area as outlined above. Additionally, The HHS's decision to invoke the PREP Act in the response to the ongoing global pandemic highlights the need for uniform and efficient interpretation of law surrounding Covered Countermeasures. Thus, this Court should dismiss Piescik's claims under the primary jurisdiction doctrine.

## VII.    PLAINTIFF IS NOT ENTITLED TO EQUITABLE RELIEF

### A.    Plaintiff's Claims For Equitable Relief Are Precluded Because He Has Not Sufficiently Alleged That He Lacks an Adequate Remedy at Law.

Plaintiff's claims for equitable relief under the FDUTPA, FAL, and for unjust enrichment should be dismissed because Plaintiff has made clear that he is seeking both injunctive relief and "damages" under the FDUTPA, FAL, and his unjust enrichment claim. [Dkt. 5, ¶¶ 56, 64, 119.] He states in conclusory fashion that he has no adequate legal remedy at law under his Unjust Enrichment claim, but offers no explanation or argument for why, nor does he plead a lack of adequate remedy at law under his FDUTPA and FAL claims, while still requesting equitable relief.

### B.    Plaintiff's Unjust Enrichment Claim Must Be Dismissed Because He Does Not Lack An Adequate Remedy at Law.

It is well established that a claim of "unjust enrichment is equitable in nature" and is thus "not available where there is an adequate legal remedy." *Nautica Int'l, Inc. v. Intermarine USA, LP.,* 5 F. Supp. 2d 1333, 1342 (S.D. Fla. 1998) (citations omitted); *see also Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005).   A plaintiff has an adequate legal remedy when he brings an unjust enrichment claim based upon identical conduct underlying the accompanying statutory claims. *See, e.g.*, *Guerro v. Target Corp.* 889 F. Supp. 2d 1348, 1356 (S.D. Fla. 2012). Piescik's claims for unjust enrichment here are based on the same exact conduct as his accompanying statutory claims, and thus must be dismissed.  *See, e.g.*, *Licul v. Wolkswagen Group of Am., Inc.*, No. 13-61686-CIV, 2013 L 6328734, at *7 (S.D. Fla. Dec. 5, 2013) (dismissed unjust enrichment claim where it "merely restates [the] other causes of action.")

C.      **Plaintiff Does Not Have Standing to Qualify For Injunctive Relief Because He Will Not Be Deceived in the Future.**

A party only has standing to seek injunctive relief "if the party alleges, and ultimately proves a real and immediate—as opposed to a merely conjectural — hypothetical — threat of *future* injury."); *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1284 (11th Cir. 2001) (alteration in original); *see also New v. Lucky Brand Dungarees Stores, Inc.*, 51 F. Supp. 3d 1284, 1285 (S.D. Fla. 2014). The "threatened injury must be *certainly impending* to constitute injury in fact" and "[a]llegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).   Federal courts within this circuit have repeatedly held that plaintiff lacks standing to seek injunctive relief in false advertising case if she is not at risk of being injured by the advertisement in the future. *Jackson v. Anheuser-Busch InBev SA/NV, LLC*, No. 20-cv-23392- Bloom/Louis, 2021 WL 3666312, at *9 (S.D. Fla. Aug. 18, 2021) ("In order to have

standing to seek injunctive relief, a plaintiff must allege an intent to resume purchasing the products at issue in the future.").[20]

Here, Plaintiff does not allege any intent to buy the Product in the future, and he admits that he is now aware of the clear, unambiguous and truthful label claim that the CVS hand sanitizer is "*Effective at eliminating more than 99.99% of *many common harmful germs & bacteria* in as entire label when he purchased the Products, and will be aware of the entire label in the future. *See, Ohio State Troopers Ass'n,* 347 F. Supp. 3d at 1228 (citing *Cfolley v. Procter & Gamble Co.*, No. 1:16-CV-918, 2016 WL 5791658, at *14 (S.D. Ohio Oct. 4, 2016) (holding plaintiffs lacked standing because "Plaintiffs are aware of their purported injuries and attribute those injuries to Old Spice deodorants, it is not plausible that Plaintiffs would purchase the product again").

## VIII.   CONCLUSION

 Piescik is not a reasonable consumer who was misled by language on the hand sanitizer Products he purchased. Nor did he suffer any harm or injury from the Products. For all of the reasons set forth above, CVS respectfully requests that the Court dismiss Plaintiff's Complaint with prejudice.

Respectfully submitted on September 10, 2021.

---

[20] *See also Cox v. Porsche Fin. Servs., Inc.*, 337 F.R.D. 426, 434 (S.D. Fla. 2020) (citation omitted) ("plaintiffs alleging FDUTPA violations . . .  did not have Article III standing to pursue injunctive relief where they failed to allege an intent to purchase the defendant's products in the future."); *see also In re Monat Hair Care Prods. Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. 18-MD-02841, 2019 WL 5423457, at *5 (S.D. Fla. Oct. 23, 2019) ("Plaintiffs do not intend to purchase the Products in the future . . . [thus] Plaintiffs fail to allege the threat of future harm, [and] they have no constitutional standing to seek injunctive relief under FDUTPA.") *see also Ohio State Troopers Ass'n v. Point Blank Enters., Inc.*, 347 F. Supp. 3d 1207, 1227 (S.D. Fla. 2018) (dismissing claims because plaintiffs who did not allege that they would "continue to wear the defective [products]" have no Article III standing to pursue a claim for injunctive relief under FDUTPA); *see also Marty v. Anheuser-Busch Cos., LLC*, 43 F. Supp. 3d 1333, 1354-55 (S.D. Fla. 2014) (holding plaintiffs lacked standing to seek FDUTPA injunctive relief claim to enjoin defendant from "falsely" labelling its beer where plaintiffs did not allege that they still purchased the beer).

By: */s/ Samuel L. Felker*
Samuel L. Felker, Esq.
Florida Bar No. 123800
Desislava K Docheva, Esq.
Florida Bar No. 1010440
Joshua A. Kravec, Esq.
Florida Bar No. 1025518
**Baker, Donelson, Bearman,**
**Caldwell & Berkowitz, P.C.**
1 Financial Plaza, Suite 1620
Fort Lauderdale, Florida 33394
Telephone: (954) 768-1600
Facsimile: (954) 337-7636
samfelker@bakerdonelson.com
ddocheva@bakerdonelson.com
jkravec@bakerdonelson.com
FLLService@bakerdonelson.com
*Counsel for Defendant, CVS Pharmacy, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on September 10, 2021, I electronically filed the foregoing with

the Clerk of the Court by using the CM/ECF system and served the foregoing via electronic mail

to:

William Wright, Esq.
The Wright Law Office, P.A.
515 N. Flagler Drive
Suite P-300
West Palm Beach, FL 33401
willwright@wrightlawoffice.com

Daniel Faherty, Esq.
Telfer, Faherty & Anderson, PL
815 S. Washington Avenue
Suite 201
Titusville, FL 32780
CGuntner@ctrfa.com

*Counsel for Plaintiff*

s/ *Samuel L. Felker*
Samuel L. Felker